**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DING GU,<br><br>        Plaintiff,<br><br>        v.<br><br>PETER ZUGUANG WANG, *et al.*,<br><br>        Defendants. | Civil Action No. 24-4348 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on two separate Motions to Dismiss Plaintiff Ding Gu on behalf of Greenland Technologies Holding Corporation's ("Plaintiff" or "Gu") Amended Complaint (ECF No. 4). The first motion is filed by Defendant Cenntro Holdings Ltd. ("Cenntro") (ECF No. 24). The second is filed by Defendants Peter Zuguang Wang ("P. Wang"), Raymond Wang ("R. Wang"), Ming Zhao ("Zhao"), Charles Athle Nelson ("Nelson"), Everett Xiaolin Wang ("E. Wang"), and Frank Shen ("Shen"), and nominal Defendant Greenland Technologies Holding Corporation ("GTEC") (ECF No. 25) (collectively, the "GTEC Defendants" and, together with Cenntro, the "Defendants"). Plaintiff opposed (ECF Nos. 30, 31), and Defendants replied, respectively (ECF Nos. 32, 33).

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons set forth below, the Court grants Defendants' Motions to Dismiss.

## I.     **BACKGROUND**[1]

Gu brings this case, on behalf of GTEC, as a shareholder derivative action against Defendants, alleging, among other things, breaches of fiduciary duty based on purported conflicts of interest and self-dealing. (*See generally* Am. Compl., ECF No. 4.)

### A.     **The Parties**

Gu is a shareholder of GTEC. (*Id.* ¶ 6.) GTEC is a corporation formed under the laws of the British Virgin Islands ("BVI"), with its "principal executive office" in New Jersey. (*Id.* ¶ 8.) Cenntro is a company incorporated under the laws of Hong Kong, and Plaintiff pleads, upon information and belief, that it also has its principal place of business in Hong Kong. (*Id.*)

P. Wang is the Chairman of GTEC's Board of Directors (the "Board"). (*Id.* ¶ 9.) P. Wang is also the sole director and shareholder of non-party Cenntro Enterprise Ltd. ("CEL"). (*Id.*) CEL is the sole director and shareholder of Cenntro. (*Id.*) Cenntro owns approximately 45.69% of GTEC's outstanding stock and previously held as much as 59.44%. (*Id.* ¶¶ 8, 23.)

R. Wang is the Chief Executive Officer ("CEO") and President of GTEC. (*Id.* ¶ 10.) R. Wang is also the son of P. Wang. (*Id.*) Zhao, Nelson, X. Wang, and Shen[2] are all members of GTEC's Board. (*Id.* ¶¶ 11-14.)

### B.     **Cenntro's Purchase of Equity Interest & the First Repayment Agreement**

In June 2017, GTEC's subsidiary, Shanghai Hengyu Enterprise Management Consulting Company LTD ("Hengyu"), sold 16.23% of its equity interest in non-party Sinomachinery Group

---

[1] For the purpose of considering the instant motions, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[2] Shen is also the Director of Research and Development at non-party Cenntro Electric Group Ltd., a wholly-owned subsidiary of non-party Cenntro Automotive Corporation, for which P. Wang serves as CEO. (Am. Compl. ¶ 11.)

Limited to Cenntro (the "Sale"). (*Id.* ¶ 15.) Cenntro paid an unspecified amount of the Sale price upfront, with an additional payment of $38,060,365.00[3] to become due and owing on October 27, 2020 (the "Balance"). (*Id.* ¶ 16.) Cenntro did not repay any of the Balance before or on the due date. (*Id.* ¶ 17.)

On November 1, 2020, GTEC and Cenntro entered into a repayment agreement dated November 1, 2020 ("First Repayment Agreement"), which extended the deadline for repayment of the Balance to April 27, 2022, and outlined a plan for periodic payments of the Balance. (*Id.* ¶ 18.) The First Repayment Agreement was executed by P. Wang, on behalf of Cenntro, and R. Wang, on behalf of GTEC. (*Id.*) The First Repayment Agreement did not charge Cenntro interest on the Balance and was not secured by collateral. (*Id.* ¶ 29.) The First Repayment Agreement also did not indicate that GTEC's Board reviewed, considered, voted on, or approved, the First Repayment Agreement. (*Id.* ¶ 19.) Ultimately, Cenntro failed to make any payments to satisfy the Balance under the First Repayment Agreement. (*Id.* ¶ 20.)

During this two-year period of the First Repayment Agreement, between October 2020 and June 2021, Cenntro sold more than 750,000 shares of GTEC stock for more than $5.3 million. (*Id.* ¶ 21.) None of the cash received by Cenntro for selling its GTEC stock, however, was used to repay the Balance. (*Id.*) Additionally, between June 2021 and December 2023, Cenntro sold an additional 520,000 shares of GTEC stock but did not file any Securities and Exchange Commission ("SEC") Form 4 to disclose the transaction. (*Id.* ¶¶ 22-23.) Cenntro received none of the cash from this additional transaction to repay GTEC for the Balance. (*Id.*)

---

[3] The Sale price was paid in foreign currency, so the amount of the Balance in United States dollars fluctuates due to changes in conversion rates. (Am. Compl. ¶ 5 n.2.)

3

### C.    GTEC Extends Cenntro's Payment Deadline for the Second Time

On March 30, 2022, GTEC and Cenntro entered into a second repayment agreement ("Second Repayment Agreement" and, together with the First Repayment Agreement, the "Agreements"), which further extended the deadline of the Balance to June 30, 2024, in which the Balance was to be paid to GTEC in eight payments due on: September 30, 2022; December 31, 2022; March 31, 2023; June 30, 2023; September 30, 2023; December 31, 2023; March 31, 2024; and June 30, 2024. (*Id.* ¶ 24.)

The Second Repayment Agreement, like the First Repayment Agreement, does not indicate that GTEC's Board reviewed, considered, voted on, or approved the Second Repayment Agreement. (*Id.* ¶ 27.) Also, the Second Repayment Agreement, like the First Repayment Agreement, was executed by P. Wang and R. Wang on behalf of Cenntro and GTEC, respectively. (*Id.* ¶ 24.) Despite Cenntro's non-payment of the Balance under the First Repayment Agreement, the Second Repayment Agreement also does not charge Cenntro any interest. (*Id.* ¶ 29.) Cenntro, however, purported to "pledge" its common shares as collateral for repayment of the Balance under the Second Repayment Agreement. (*Id.* ¶ 26.) In the end, Cenntro again failed to make any payments under the Second Repayment Agreement. (*Id.* ¶ 28.) GTEC, through its Board, and under the control of Cenntro and P. Wang, failed to take any remedial action regarding Cenntro's failure to pay under the Second Repayment Agreement, including seeking to foreclose on the common shares of Cenntro that were "pledged" as collateral. (*Id.* ¶ 33.)

### D.    Cenntro and P. Wang's Purported Self-Dealing

In April 2022, GTEC's public shareholders learned, after reading GTEC's 2021 SEC Form 10-K, of the Second Repayment Agreement. (*Id.* ¶ 30.) Subsequently, approximately 100 shareholders wrote to GTEC, demanding an explanation for the Second Repayment Agreement

and information about GTEC's efforts to collect upon the Balance owed by Cenntro. (*Id.*) R. Wang responded and explained that Cenntro's stock served as collateral against the Balance. (*Id.* ¶ 31.) But, as of December 2023, the collateralized shares have decreased in number, were now owned by CEL, and were worth a fraction of what they were worth when "pledged" in 2022 in connection with the Second Repayment Agreement. (*Id.* ¶ 32.) GTEC has not taken any action to collect upon the overdue Balance or to foreclose on the collateral shares that secured part of the Balance. (*Id.* ¶ 33.) GTEC's public SEC filings, however, indicate that the overdue Balance was written off.[4] (*Id.* ¶¶ 33-38.) According to Plaintiff, GTEC's provision in its SEC Form 10-K filing, concerning the inability to collect the Balance, effectively forgives Cenntro of any obligation to repay the Balance. (*Id.* ¶ 35.) As a result, GTEC, and its minority shareholders indirectly, suffered damages in the amount of at least $38,060,365. (*Id.* ¶ 39.)

E.     **GTEC Announces the Spin-Off Transaction**

GTEC, on February 15, 2024, announced that its Board had approved a plan to separate GTEC's electric industrial vehicle and drivetrain segments into two independent, publicly-traded companies (the "Spin-Off Transaction").[5] (*Id.* ¶ 41.) Specifically, under the Board-approved plan, GTEC's existing drivetrain business would operate separately post-spin-off and be publicly traded on the Over-the-Counter ("OTC") market.[6] (*Id.*) GTEC's electrical industrial vehicle business

---

[4] GTEC's SEC Form 10-K, filed on April 16, 2024, stated that, as of December 31, 2023, GTEC had written Cenntro's Balance off as an expected loss, stating that GTEC recorded a full provision of the Balance for expected credit losses for the year ended December 31, 2023. (Am. Compl. ¶ 35.) The next day, GTEC filed an amended 10-K, revising GTEC's expectation regarding Cenntro's payment of the balance—that it was back on the list of receivables and not considered expected credit losses. (*Id.* ¶¶ 36-37.)

[5] As of February 15, 2024, Cenntro had not paid any of the balance under the Second Repayment Agreement. (*See* Am. Compl. ¶ 45.)

[6] GTEC's drivetrain business accounts for 90% of its revenue. (Am. Compl. ¶ 42.)

would remain publicly traded on the NASDAQ. (*Id.*) GTEC's Board claims that its goal in the Spin-Off Transaction was to enhance shareholder value. (*Id.* ¶ 42.) But, since the announcement of the Spin-Off Transaction, GTEC's stock price has dropped by at least 57%. (*Id.*) Plaintiff contends that, upon information and belief, the Spin-Off Transaction is designed only to benefit P. Wang. (*Id.* ¶ 43.)

### F.    This Action

On March 28, 2024, Plaintiff derivatively, on behalf of GTEC, filed the instant action asserting the following five causes of action: (1) breach of fiduciary duty against Defendants in connection with their failure to obtain repayment of the Balance ("Count One"); (2) Waste ("Count Two"); (3) unjust enrichment against P. Wang and Cenntro ("Count Three"); (4) breach of fiduciary duty against Defendants in connection with the Spin-Off Transaction ("Count Four"); and (5) violation of Section 16(a) of the Exchange Act and SEC Rule 14A-9 against Defendants ("Count Five").[7] (*See generally* Compl., ECF No. 1.) Before filing the instant derivative action, Plaintiff did not personally make a demand on GTEC's Board to assert such claims because, according to him, a demand would have been futile. (Am. Compl. ¶ 45.) On July 8, 2024, Defendants filed the instant Motions to Dismiss the Amended Complaint. (ECF Nos. 24, 25.) Plaintiff opposed (ECF Nos. 31, 32), and Defendants replied, respectively (ECF Nos. 32, 33). The Motions are now ripe for review.

---

[7] On April 26, 2024, Plaintiff filed an Amended Complaint (ECF No. 4), following the filing of GTEC's 2023 10-K Form, where it was announced that GTEC had incorporated a provision for the inability to collect the Balance from Cenntro. (Am. Compl. ¶ 35.) All other allegations remain the same in the Amended Complaint as in the initial Complaint. (*Compare* Compl., *with* Am. Compl.)

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(2) [8]

Rule 12(b)(2) "provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant." *Dzielak v. Whirlpool Corp.*, No. 12-89, 2018 WL 6985013, at *2 (D.N.J. Dec. 21, 2018), *R. & R. adopted*, No. 12-89, 2019 WL 145608 (D.N.J. Jan. 8, 2019). "If an issue is raised as to whether a court lacks personal jurisdiction over a defendant, the plaintiff bears the burden of showing that personal jurisdiction exists." *Marten v. Godwin*, 499 F.3d 290, 295-96 (3d Cir. 2007) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)).

The Court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by New Jersey's long-arm statute. *Murphy v. Eisai, Inc.*, 503 F. Supp. 3d 207, 221 (D.N.J. 2020). New Jersey's long-arm statute permits the same protections afforded by the Due Process Clause under the Fourteenth Amendment of the United States Constitution. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)). The Court, therefore, may exercise personal jurisdiction so long as the defendant maintains "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Henry Heide, Inc. v. WRH Prods. Co.*, 766 F.2d 105, 108 (3d Cir. 1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Although a plaintiff bears the burden of showing that personal jurisdiction exists, "when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d

---

[8] Unless otherwise stated, all references to "Rule" or Rules" refer to the Federal Rules of Civil Procedure.

at 97 (citation omitted). Still, the plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state" to support jurisdiction. *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). And the plaintiff must establish these "jurisdictional facts through sworn affidavits or other competent evidence . . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of [personal] jurisdiction." *Miller Yacht Sales*, 384 F.3d at 101 n.6 (first and second alteration in original) (internal citation and quotation marks omitted). Indeed, the plaintiff must respond to the defendant's motion with "actual proofs"; "affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). If the plaintiff meets this burden, the burden shifts to the defendant, who must make a compelling case that the exercise of jurisdiction would be unreasonable. *Mellon Bank*, 960 F.2d at 1226 (citations omitted).

## B.    Rule 12(b)(6)

Rule 12(b)(6) provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *Haney v. USA Gymnastics, Inc.*, No. 21-7213, 2022 WL 909871, at *2 (D.N.J. Mar. 29, 2022). When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). While Rule 8(a)(2) does not require that a complaint contain detailed factual allegations, "a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips*, 515 F.3d at 231 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

## III.    DISCUSSION

### A.    Cenntro's Motion to Dismiss

Cenntro moves to dismiss primarily on the grounds that it is not subject to the Court's exercise of personal jurisdiction and, in the alternative, that Plaintiff does not have prudential standing to maintain this derivative action. (*See generally* Cenntro's Moving Br., ECF No. 24-1.) Because jurisdiction is a threshold question, the Court will address those arguments first.

#### *1.    Personal Jurisdiction over Cenntro*

Plaintiff argues that this Court has personal jurisdiction over Cenntro because: (1) its "managing agent, P. Wang, . . . was served in New Jersey," subjecting it to general personal jurisdiction; and (2) "Cenntro . . . has sufficient contacts with New Jersey to sustain a finding of specific personal jurisdiction." (Pl.'s Opp'n Br. to Cenntro's Mot. to Dismiss 10, ECF No. 31.)

A court is authorized to exercise two types of personal jurisdiction: general jurisdiction or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15

(1984). General jurisdiction applies when an individual is domiciled in the forum state. *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. 2015) ("[A]n 'individual's domicile,' or home, constitutes the paradigmatic 'forum for the exercise of general jurisdiction.'") (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). "[D]omicile is established by an objective physical presence in the state or territory coupled with a subjective intention to remain there indefinitely." *Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). Specific jurisdiction, on the other hand, allows a Court to exercise jurisdiction over a non-resident defendant when: (1) the defendant purposefully avails itself of the privilege of conducting its activities within the forum; (2) the litigation arises out of or relates to at least one of those activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

### a.    General Personal Jurisdiction

The Court first considers whether Plaintiff has met his burden to establish general personal jurisdiction over Cenntro.

Plaintiff argues that this Court has general personal jurisdiction under Rule 4(k)(1)(A) over Cenntro because Cenntro's managing agent, P. Wang, was served with process in New Jersey. (Pl.'s Opp'n Br. to Cenntro's Mot. to Dismiss 10.) Put differently, Plaintiff argues that this Court has general personal jurisdiction over Cenntro because of the Third Circuit's recognition of "tag jurisdiction."[9]

---

[9] "Tag jurisdiction" is "jurisdiction based on service of a person who happens to be in the jurisdiction, however fleetingly." *Pastor Ents. v. GKN Driveline N. Am., Inc.*, No. 19-21872, 2020 WL 5366286, at *4 (D.N.J. Sept. 8, 2020).

General jurisdiction arises over a corporate defendant only in "its place of incorporation and principal place of business," *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021), and, in "exceptional" cases, in jurisdictions where its activities are "so continuous and systematic as to render it essentially at home in the forum State," *Daimler*, 571 U.S. at 119. For purposes of "tag jurisdiction," "it is undisputed that mere service on a corporate agent cannot establish personal jurisdiction without a minimum contacts inquiry." *Nehemiah v. Athletics Cong. of the U.S.A.*, 765 F.2d 42, 47 (3d Cir. 1985).

At the outset, the Court declines to find that it has general personal jurisdiction over Cenntro in such a scenario, as here, where a non-resident foreign corporation's purported "managing" agent[10] is served with process within the boundaries of the forum state.[11] In any event, Plaintiff must still show that Cenntro has minimum contacts with New Jersey, warranting the exercise of personal jurisdiction over it. *Nehemiah*, 765 F.2d at 47.

Here, Plaintiff concedes that Cenntro is incorporated under the laws of Hong Kong and that, upon information and belief, its principal place of business is in Hong Kong.[12]

---

[10] In the David He ("CEO He") Declaration, CEO He certified that Cenntro neither has a registered agent for service of process in New Jersey nor is authorized to do business in New Jersey. (Decl. of David He in Supp. of Cenntro's Motion to Dismiss ("CEO He Decl.") ¶ 5, ECF No. 24-2.)

[11] Plaintiff fails to cite any cases that stand for this proposition. (*See generally* Pl.'s Opp'n Br. to Cenntro's Mot. to Dismiss.) Instead, Plaintiff merely cites cases that involve: (1) "tag jurisdiction" over an individual party and not a corporate agent; and (2) Pennsylvania's foreign-corporation-registration regime, under which the Pennsylvania Constitution permits courts to exercise general jurisdiction over registered foreign corporations. As to the second group of cases, New Jersey has no such law. *See Simplot India LLC v. Himalaya Food Int'l Ltd.*, No. 23-1612, 2024 WL 1136791, at *10 (D.N.J. Mar. 15, 2024) ("New Jersey's registration statute does not include . . . an express consent requirement [to general personal jurisdiction]. This Court, absent a legislative imprimatur, will not fill the void and write one in.").

[12] The Amended Complaint does not allege general personal jurisdiction over Cenntro based on its place of incorporation or principal place of business. (*See generally* Am. Compl.)

(Am. Compl. ¶ 8.) This leaves Plaintiff with one way to establish general personal jurisdiction over Cenntro: Plaintiff must demonstrate that its activities are so continuous and systematic to essentially render it "at home" in New Jersey. *JWQ Cabinetry, Inc. v. Granada Wood & Cabinets, Inc.*, No. 13-4110, 2014 WL 2050267, at *3 (D.N.J. May 19, 2014). The Court finds that Plaintiff has failed to do so. Plaintiff's Amended Complaint is devoid of allegations about Cenntro having any employees, bank accounts, land or personal property, or telephone listings in New Jersey. Instead, in support of Cenntro's Motion, CEO He has certified that Cenntro is not registered or authorized to do business in New Jersey, has no employees or office space in New Jersey, and has no bank accounts, telephone listings, or operations in New Jersey. (CEO He Decl. ¶¶ 5-6.) As such, the Court finds that Plaintiff has failed to show that Cenntro maintains such a robust presence in New Jersey that it could fairly be considered "at home" to invoke this Court's general personal jurisdiction over Cenntro. *See Abira Med. Labs., LLC v. Mutual of Omaha Ins. Co.*, No. 23-3953, 2024 WL 2746088, at *3 (D.N.J. May 29, 2024) (finding no general personal jurisdiction where "nothing in the record . . . suggest[ed] that [d]efendant was either incorporated or headquartered in New Jersey or that its business operations in New Jersey are so substantial that they give rise to the exceptional case of general [personal] jurisdiction"). The Court, accordingly, finds that Cenntro is not subject to general personal jurisdiction in this Court. *See Daimler*, 571 U.S. at 137.

b.     **Specific Personal Jurisdiction**

Having failed to establish general personal jurisdiction over Cenntro, the Court now considers whether Plaintiff can show that this Court has specific personal jurisdiction over Cenntro.

To assert specific personal jurisdiction, Plaintiff must allege "claim-specific jurisdiction over defendants," meaning "an affiliatio[n] between the forum and the underlying controversy."

12

*Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 499 (D.N.J. 2017) (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)). Because a specific personal jurisdiction analysis is claim-specific, the Court typically analyzes claims separately. *See Remick v. Manfredy*, 238 F.3d 248, 255-60 (3d Cir. 2001). Claim-specific analysis, however, is not required where the claims at issue factually overlap. *O'Connor*, 496 F.3d at 318 n.3.

Here, Plaintiff's claims stem from the same underlying factual circumstances—namely, the Repayment Agreements, purported breaches of fiduciary duties, and purported nondisclosed stock sales—and the parties have likewise addressed the issue of specific personal jurisdiction without differentiating between specific claims. The Court, therefore, will not employ a claim-specific approach to discern whether it may properly exercise specific personal jurisdiction over Cenntro. *See Grant Indus., Inc. v. Isaacman*, No. 21-13094, 2022 WL 2358422, at *10 n.12, (D.N.J. June 30, 2022) (analyzing breach of contract, misappropriation of confidential information and trade secrets, fraud, and conversion claims together because they arose from the "same sequence of events and factual allegations").

### i.    *Purposeful Availment*

Turning to the first requirement of specific personal jurisdiction, the Court must be satisfied that Cenntro purposefully directed its conduct or activities to New Jersey. In the Amended Complaint, Plaintiff alleges that:

> [t]his Court has personal jurisdiction over each Defendant named herein because each Defendant is either a corporation that conducts business in and/or maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

(Am. Compl. ¶ 3.)

To establish purposeful availment for specific personal jurisdiction, "[t]he plaintiff must show that the defendant took 'some act by which [it] purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 436 (D.N.J. 2021) (quoting *Ford Motor Co.*, 592 U.S. at 359). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 592 U.S. at 359 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). "[Plaintiff] must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* (quoting *Walden*, 571 U.S. at 285).

Here, the Court finds that Plaintiff fails to adequately allege that Cenntro purposefully directed its conduct or activities to New Jersey. Plaintiff merely alleges, in a conclusory fashion, that "Defendant[s are] either a corporation that conducts business in and/or maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice." (Am. Compl. ¶ 3.) Setting aside the fact that the Court need not accept Plaintiff's "group-pled"[13] allegations about Defendants' contacts with New Jersey, Plaintiff fails to show that Cenntro purposefully availed itself of New Jersey. That is, neither the Amended

---

[13] The Court need not accept conclusory and "group-pled" allegations as true at the pleadings stage. *See, e.g.*, *Jovanovic v. U.S. Olympic & Paralympic Comm.*, No. 22-2098, 2023 WL 7179298, at *8 (D.N.J. Mar. 31, 2023) ("Insofar as the [c]omplaint asserts group pleading to establish personal jurisdiction over each [d]efendant, the Court agrees with [defendants] that this is improper, because '[e]ach defendant's contacts with the forum state must be assessed individually.'" (alteration in original) (quoting *Keeton*, 465 U.S. at 781 n.3)). This defect alone, therefore, warrants dismissal for failure to properly allege personal jurisdiction over each defendant. *Wade v. Kenan Advantage Grp., Inc.*, No. 20-18155, 2021 WL 4704962, at *2, *7 (D.N.J. Oct. 8, 2021)) (dismissing complaint that broadly alleged defendant had "engaged in business within . . . New Jersey on a regular systemic, continuous and substantial basis and ha[d] purposefully established significant contacts within New Jersey").

Complaint nor the proofs submitted in opposition to Cenntro's Motion demonstrate that Cenntro negotiated the Repayment Agreements, executed the Repayment Agreements, or made investment decisions in, or had any other connection to, New Jersey.

Moreover, Plaintiff fails to rebut any of the statements made in the CEO He Declaration concerning Cenntro. In particular, CEO He certified that "Cenntro is not authorized to do business in New Jersey and has no offices, employees, bank accounts, telephone listings, or operations of any kind in New Jersey." (CEO He Decl. ¶ 5.) CEO He also certified that "Cenntro is not a foreign corporation [registered] with the New Jersey Division of Revenue and Enterprise Services, Business Services Bureau." (*Id.* ¶ 6.) What's more, CEO He further certified that "Cenntro has no physical presence in New Jersey and has no registered agent for service of process in New Jersey." (*Id.* ¶ 5.)

To the extent Plaintiff argues that this Court should infer that, because Cenntro is GTEC's controlling shareholder, it is likely that Cenntro entered into the Repayment Agreements in New Jersey, such argument is unavailing (Pl.'s Opp'n Br. to Cenntro's Mot. to Dismiss 15 ("The . . . Repayment Agreements were executed by P. Wang . . . and R. Wang, a New Jersey resident who works in New Jersey as CEO of GTEC . . . . It is . . . reasonable to infer . . . that Cenntro entered into the . . . Repayment Agreements in New Jersey.").) Shareholders, however, are not the same as the corporations they own. *Richard J. Pulaski Constr. Co. v. Air Frame Hangars, Inc.*, 950 A.2d 868, 877 (N.J. 2008) ("[New Jersey] abide[s] by 'the fundamental propositions that a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise.'" (citation omitted)). So, "for a [p]laintiff to 'impute the jurisdictional contacts' of a corporation to a shareholder so as to subject the shareholder defendant to personal jurisdiction, '[p]laintiff must

15

present sufficient facts to support a showing of piercing the corporate veil.'" *Lawson v. Dick Sporting Goods, Inc.*, No. 22-1560, 2023 WL 2207421, at *5 (D.N.J. Feb. 24, 2023) (quoting *Air Sea Int'l Forwarding, Inc. v. Glob. Imports & Trading, Inc.*, No. 03-268, 2008 WL 11510000, at *9 (D.N.J. Apr. 18, 2008)). Here, the Amended Complaint does not contain any allegations to suggest that Plaintiff seeks to impute personal jurisdiction under an "alter-ego" theory. As such, the Court rejects Plaintiff's argument that Cenntro, as a controlling stockholder, "likely executed" the Agreements in New Jersey, subjecting it to specific personal jurisdiction.

The Court, therefore, finds that Plaintiff has failed to meet his burden in establishing that the Repayment Agreements were negotiated or executed in New Jersey or that any purported breaches of fiduciary duties, or purported nondisclosed stock sales occurred in, or had a connection to, New Jersey through sufficient proof. *See Rehrer v. Atiyeh*, No. 14-8031, 2015 WL 5680104, at *1 (D.N.J. Sept. 25, 2015) (explaining that once defendants submit sworn evidence supporting dismissal for lack of jurisdiction, the burden shifts to plaintiff to "establish[] jurisdictional facts through sworn affidavits or other competent evidence; reliance on the bare pleadings is not enough"). For these reasons, the Court finds that Plaintiff has failed to demonstrate that Cenntro has purposefully availed itself of New Jersey with respect to Plaintiff's claims.

### ii.    Remaining Elements

Because all three elements of the test must be met to establish specific personal jurisdiction, the Court need not consider the remaining two elements. *See O'Connor*, 496 F.3d at 317. The Court, accordingly, finds that Plaintiff fails to meet his burden to show that this Court has specific personal jurisdiction over Cenntro. *See Cerciello v. Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) ("[B]are pleadings alone are insufficient to withstand a motion to dismiss for lack of

personal jurisdiction.") (internal quotation marks omitted). The Court, accordingly, also lacks specific personal jurisdiction over Cenntro.

### 2.    *Remaining Claims Against Cenntro*

Because the Court lacks personal jurisdiction over Cenntro, all claims against it are dismissed without prejudice. *TF Yachts, LLC v. Vandutch Prod. & Dev. B.V.*, No. 20-8044, 2021 WL 672659, at *6 (D.N.J. Feb. 22, 2021) (dismissing all claims against defendants because the court lacked personal jurisdiction over defendants).

### B.    **GTEC Defendants' Motion to Dismiss**

The GTEC Defendants move to dismiss the Amended Complaint for lack of prudential standing under Rule 12(b)(6)[14] because Plaintiff fails to allege facts sufficient to show that he first had obtained or attempted to obtain permission from a BVI High Court to sue derivatively on behalf of GTEC—a requirement under BVI law. (*See generally* GTEC Defs.' Moving Br., ECF No. 25-1.) The GTEC Defendants further argue that even if New Jersey law applies, Plaintiff still lacks prudential standing because "he never made a pre-suit demand on GTEC's Board . . . , thus depriving him of standing under New Jersey law."[15] (*Id.* at 2.) Plaintiff, on the other hand, argues that New Jersey law applies based on the forum's choice of law principles and that he has

---

[14] Prudential standing to maintain a shareholder derivative suit is evaluated under Rule 12(b)(6). *Potter v. Cozen & O'Connor*, 46 F.4th 148, 157 (3d Cir. 2022) (explaining that the shareholder standing rule is prudential, not constitutional or jurisdictional, implicating the power to bring claims, not the court's power to hear them).

[15] The GTEC Defendants assert that "New Jersey law does not recognize an exception to the demand requirement based on futility." (GTEC Defs.' Moving Br. 18.)

prudential standing under New Jersey law because he has sufficiently pled demand futility.[16] (Pl.'s Opp'n Br. to GTEC Defs.' Mot. to Dismiss 19-21, ECF No. 30.)

Thus, the heart of the issue is whether Plaintiff has prudential standing to assert derivative claims on behalf of GTEC. Before reaching that issue, the Court must first determine whether the laws of BVI or New Jersey apply based on its choice of law principles.

### 1.    *Choice of Law*

In a federal action based on diversity jurisdiction, the Court must look to the choice of law rules of the venue state, New Jersey, to determine which substantive law governs. *See Am. Cyanamid Co. v. Fermenta Animal Health*, 54 F.3d 177, 180 (3d Cir. 1995); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007). In assessing choice of law disputes arising under contract and tort law, New Jersey courts apply the "most substantial relationship" test enunciated in the Restatement (Second) of Conflict of Laws (the "Restatement") § 188. *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 455 (N.J. 2008). New Jersey's "most substantial relationship" test is two-pronged. *Id.* at 460. First, a court assesses whether an actual conflict exists between the potentially applicable laws. *Id.* If no actual conflict exists, the court's inquiry ends, and the court applies the law of the forum state. *Id.* at 461. If, however, an actual conflict exists, the court turns to the second prong of the test—the "most substantial relationship" prong. *Id.* at 455. This test is applied "on an issue-by-issue basis" and "is qualitative, not quantitative." *Id.* at 460.

Applying the Court's choice of law framework, the Court will first determine whether the competing laws—BVI and New Jersey—are in conflict, which is to say whether "application of

---

[16] Plaintiff, on the other hand, asserts that demand futility exists under New Jersey law. (*See* Pl.'s Opp'n Br. to GTEC Defs.' Mot. to Dismiss 10 ("[The GTEC Defendants] . . . mistake that demand futility no longer exists under New Jersey law.").)

the different . . . laws would lead to a different outcome in the case." *Donovan v. W. R. Berkley Corp.*, 566 F. Supp. 3d 224, 231 (D.N.J. 2021). If there is no conflict, New Jersey law applies, but if a conflict exists, the Court will proceed to analyze which jurisdiction has the "most significant relationship" to the dispute pursuant to Section 6 of the Restatement. *See id.*

### a.    Whether the Relevant Laws of BVI and New Jersey Conflict

The Court finds that a conflict exists between the relevant laws of BVI and New Jersey. Under BVI law, a shareholder is permitted to assert derivative claims on behalf of a company only if the shareholder first obtains consent from the BVI High Court. *In re Kingate Mgmt. Ltd. Litig.*, No. 09-5386, 2016 WL 5339538, at *36 (S.D.N.Y. Sept. 21, 2016), *aff'd*, 746 F. App'x 40 (2d Cir. 2018) ("Derivative actions, brought by shareholders on behalf of a company, [under BVI law,] may only be brought . . . with leave of the [BVI High C]ourt."). Section 184C of the BVI Business Companies Act ("BVI Act") provides as follows:

**Derivative Actions**

**184C.** (1) Subject to subsection (3), the Court may, on the application of a member of a company, grant leave to that member to—
    (a) bring proceedings in the name and on behalf of that company; or
    (b) intervene in proceedings to which the company is a party for the purpose of continuing, defending or discontinuing the proceedings on behalf of the company.

(2) Without limiting subsection (1), in determining whether to grant leave under that subsection, the Court must take the following matters into account—

    (a) whether the member is acting in good faith;
    (b) whether the derivative action is in the interests of the company taking account of the views of the company's directors on commercial matters;
    (c) whether the proceedings are likely to succeed;

> (d) the costs of the proceedings in relation to the relief likely to be obtained; and
> (e) whether an alternative remedy to the derivative claim is available.
>
> (3) Leave to bring or intervene in proceedings may be granted under subsection (1) only if the Court is satisfied that—
>
> > (a) the company does not intend to bring, diligently continue or defend, or discontinue the proceedings, as the case may be; or
> > (b) it is in the interests of the company that the conduct of the proceedings should not be left to the directors or to the determination of the shareholders or members as a whole.
>
> (4) Unless the Court otherwise orders, not less than 28 days notice of an application for leave under subsection (1) must be served on the company and the company is entitled to appear and be heard at the hearing of the application. . . .
>
> (6) *Except as provided in this section, a member is not entitled to bring or intervene in any proceedings in the name of or on behalf of a company.*

BVI Act § 184C. As such, the BVI Act expressly requires that a shareholder obtain leave from the BVI High Court to initiate a derivative action on behalf of a BVI company. *See id.*

New Jersey law, on the other hand, contains no such consent requirement in order to bring a shareholder derivative action. Instead, a derivative action may be brought under New Jersey law upon a refused demand by a company's board to undertake such action in the company's name or upon a showing that making such a demand would be futile. *See* N.J. Stat. Ann. § 14A:3-6. Although the Court—under New Jersey law—plays an important function in determining whether a plaintiff sufficiently pleads that a proper demand was made and refused or that a demand otherwise would have been futile, a plaintiff is not required to seek permission to file a derivative

action.[17] New Jersey law, therefore, cannot be reconciled with BVI's permission-based statutory scheme. As such, a conflict is present because the application of each law could result in different outcomes. *See Donovan*, 566 F. Supp. 3d at 231.

Having determined that a conflict exists under the relevant laws, the Court must proceed to the next step of the analysis and consider how the Restatement's choice of law principles under Section 6 inform the "most-significant relationship test." *Donovan*, 566 F. Supp. 3d at 233. But, before doing so, the Court notes that "the internal affairs doctrine presumptively governs the Court's analysis." *See Krys v. Aaron*, 106 F. Supp. 3d 472, 479 (D.N.J. 2015) (citing *Camp Jaycee*, 962 A.2d at 467). In other words,

> [t]he internal affairs doctrine serves as a "conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands."

*Id.* at 484 (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982)). "New Jersey courts adhere to this doctrine, and direct that 'the law of the state of incorporation [governs] internal corporate affairs.'" *Id.* (quoting *Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005)) (citation omitted). But, at the same time, the Court recognizes that this general presumption associated with the internal affairs doctrine "is not without exception." *Id.* at 485. Nevertheless, because the internal affairs doctrine "is not without exception," the Court will proceed in its choice of law analysis to determine whether, despite this presumption, New Jersey has a more significant relationship to the disputed corporate actions. *Swift v. Pandey*, No. 13-650, 2014 WL 1745040, at *4 n.10 (D.N.J.

---

[17] "The substantive requirements of demand are a matter of state law." *Blasband v. Rales*, 971 F.2d 1034, 1047 (3d Cir. 1992) (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96-97 (1991)), *overruled on other grounds*, *In re Cognizant Tech. Sols. Corp. Deriv. Litig.*, 101 F.4th 250 (3d Cir. 2024).

21

Apr. 30, 2014) (citation omitted) (generally noting that the internal affairs doctrine may be excused in "'unusual cases'"), *recons. denied*, 2014 WL 3362370 (D.N.J. July 8, 2014).

**b.    Whether New Jersey Has the "Most Significant Relationship" to the Claims**

The Court finds that Plaintiff fails to allege sufficient facts to demonstrate that the State of New Jersey has a more significant relationship than the BVI to his shareholder derivative claims.

Section 302(2) of the Restatement sets forth a presumption that "the local law of the state of incorporation" will apply unless "some other state has a more significant relationship . . . ." Restatement (Second) of Conflict of Laws § 302(2) (1971). As such, the laws of the BVI are presumed to apply to this matter because GTEC is incorporated under the laws of BVI, unless Plaintiff established that New Jersey has a more significant relationship to the claims. The Court now turns to the factors outlined in Section 6 to determine whether New Jersey has a more significant relationship to Plaintiff's fiduciary duty claims to overcome this presumption.

Section 6 of the Restatement, which outlines universal principles for choice of law issues, provides some considerations bearing on the question of what jurisdiction has a more significant relationship to the dispute, including: (1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states. Restatement (Second) of Conflict of Laws § 6; *see also Camp Jaycee*, 962 A.2d at 463 (outlining Section 6 principles). The Court will consider each factor in turn.

First up are the first and third factors—the interests of interstate comity and of the field of tort law. When analyzing the first and third factors, the Court must consider "'whether application of a competing state's law would frustrate the policies or the body of law of other interested states.'" *Camp Jaycee*, 962 A.2d at 463 (citation omitted); *see also Swift*, 2014 WL 1745040, at

22

*6 (generally noting that the first and third factors call for, in essence, the same inquiry). Here, under New Jersey law, directors of a corporation are obligated to "discharge their duties in good faith and with that degree of diligence, care[,] and skill which ordinarily prudent people would exercise under similar circumstances in like positions." N.J. Stat. Ann. 14A:6-14. New Jersey law also requires a director to perform their functions "in good faith" and "in a manner that he or she reasonably believes to be in the best interests of the corporation." *Seidman v. Clifton Sav. Bank, S.L.A.*, 14 A.3d 36, 52 (N.J. 2011). Similarly, BVI law, like New Jersey law, requires directors to "act honestly and in good faith and in what the director believes to be in the best interests of the company." *Stewart Title Guar. Co. v. Stewart Title Latin Am., Inc.*, No. 12-3269, 2017 WL 1078759, at *10 (S.D. Tex. Mar. 21, 2017) (quoting Section 120(1) of the BVI Act). Section 122 of the BVI Act also requires directors to "exercise the care, diligence, and skill that a reasonable director would exercise in the same circumstances." *Amicorp Mgmt. Ltd. v. Insight Sec., Inc.*, No. 19-3745, 2021 WL 4502177, at *7 (N.D. Ill. Sept. 30, 2021) (quoting Section 122 of the BVI Act). New Jersey and BVI law concerning the duties of corporate directors is, therefore, "inherently harmonized." *Krys*, 106 F. Supp. 3d at 485. As such, the first and third factors are neutral.

Next up are the second and fourth factors—the interest of the parties and of judicial administration. Here, the Court notes that with respect to issues of "practicality and ease of application" under the fourth factor, *Camp Jaycee*, 962 A.2d at 467, the application of BVI Law presents certain practical difficulties of determining foreign law. Nevertheless, any incidental burden remains too insignificant to overcome the application of BVI Law under the internal affairs doctrine.

Last up is the fifth factor—the competing interests of the jurisdictions. The Court must consider the policies "the legislature or court intended to protect by having that law apply to wholly

domestic concerns, and then, [must consider] whether those concerns will be furthered by applying that law to the multi-state situation." *Pfizer, Inc. v. Emp'rs Ins. of Wausau*, 712 A.2d 634, 639-40 (1998) (citation omitted). Here, Plaintiff argues that the Repayment Agreements "implicate[] and touch[] upon New Jersey." (Pl.'s Opp'n Br. to GTEC Defs.' Mot. to Dismiss 17.) Plaintiff further maintains that GTEC has its executive offices in New Jersey and argues that it is reasonable to infer that the Repayment Agreements were "likely executed" in New Jersey.[18] (*Id.*) "The domicile, residence, place of incorporation, and place of business of a defendant corporation are relevant, although not dispositive, considerations in a choice-of-law determination." *Fu v. Fu*, 733 A.2d 1133, 1141 (N.J. 1999) (citation omitted). Moreover, "unlike more conventional torts, a breach of fiduciary duty by an officer or director based on actions causing the corporation to incur additional debt is not manifested through identifiable physical conduct or harm." *In re Innovation Fuels, Inc.*, No. 13-1004, 2013 WL 3835827, at *6 (Bankr. D.N.J. 2013).

Even accepting Plaintiff's theory that the Repayment Agreements were executed in New Jersey based on GTEC having an office in New Jersey, this by itself is insufficient to establish a "significant connection" to New Jersey. *See, e.g.*, *Emerson Radio Corp. v. Fok Hei Yu*, No. 20-1618, 2021 WL 1186824, at *4 n.2 (D.N.J. Mar. 30, 2021) (explaining that a corporation's New Jersey principal place of business was "insufficient on its own to warrant a departure from the internal affairs doctrine"); *Swift*, 2014 WL 1745040, at *6 (explaining that defendants' domicile and the company's corporate offices do not constitute "substantive facts" tying defendants' alleged misconduct to the state). As such, at the motion to dismiss stage, the Court finds that New Jersey law does not apply. Put simply, Plaintiff has not set forth any specific facts demonstrating a significant connection between the substance of the fiduciary duty claims and New Jersey. Absent

---

[18] Plaintiff also alleges that Shen and Nelson are New Jersey residents. (Am. Compl. ¶¶ 11, 13.)

such a showing, the Court cannot find any competing interest of sufficient weight to justify departure from the presumption of the internal affairs doctrine. As the allegations now stand, the Court finds that the Section 6 factors weigh in favor of applying BVI law.

In sum, even considering and accepting as true Plaintiff's allegations that certain conduct underlying his breach of fiduciary claims occurred in or was based out of New Jersey, the application of the relevant Restatement factors demonstrates that the BVI has the most significant relationship to this matter. For all of these reasons, at this juncture, the Court finds that the law of the BVI, the location of GTEC's incorporation, governs Plaintiff's breach of fiduciary duty claims against the GTEC Defendants.

### 2.    *Remaining Claims Against the GTEC Defendants*

Having found that BVI law applies to Plaintiff's breach of fiduciary claims at the motion to dismiss stage, the Court now considers whether Plaintiff has adequately alleged that he has obtained permission from a BVI High Court to maintain the instant shareholder derivative suit. The Court's analysis can be brief. The GTEC Defendants argue that Plaintiff has not, and Plaintiff does not dispute, that the Amended Complaint makes no such allegation. (*See generally* Am. Compl.) As such, because under BVI law Plaintiff must obtain leave from the BVI High Court to initiate a derivative action on behalf of a BVI company and such allegations are absent from the Amended Complaint, the Court dismisses Plaintiff's Amended Complaint. The Court, accordingly, finds that Plaintiff lacks prudential standing to bring this suit.

IV.     **CONCLUSION**

For the reasons set forth above, the Court grants Defendants' Motions to Dismiss. As to the claims dismissed herein, the Court will grant Plaintiff leave to amend to correct the deficiencies identified in this Memorandum Opinion in any second amended complaint. The Court will enter an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE